

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
FEB 0 6 2020
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
         DEPUTY CLERK

| | |
|---|---|
| MOHAMMAD ALI AYOBI,<br><br>*Petitioner*,<br><br>v.<br><br>RAY CASTRO, Warden, South Texas Detention Complex; DANIEL BIBLE, Field Office Director, San Antonio Field Office, U.S. Immigration and Customs Enforcement; MATTHEW ALBENCE, Acting Director, U.S. Immigration and Customs Enforcement; KEVIN MCALEENAN, Acting Secretary, U.S. Department of Homeland Security; and WILLIAM BARR, U.S. Attorney General; in their official capacities,<br><br>*Respondents*. | Civil No. SA-19-cv-01311-OLG |

## ORDER

On this date, the Court considered Mohammad Ali Ayobi's Petition for Writ of Habeas Corpus. *See* docket no. 4 (the "Petition"). On July 24, 2017, Petitioner Mohammad Ali Ayobi ("Petitioner" or "Mr. Ayobi"), a non-criminal alien and citizen of Afghanistan, was detained pending potential removal pursuant to Title 8, United States Code, Section 1226(a) ("§ 1226(a)"). Petitioner is presently seeking relief from removal in his underlying immigration proceedings, and Petitioner remains detained as of this date. In his Petition before this Court, Mr. Ayobi asserts that the Due Process Clause of the Fifth Amendment requires that Respondents afford him additional procedural protections with respect to his continued detention, in light of his lengthy detention, which has now exceeded more than two-and-a-half years. Specifically, Mr. Ayobi asserts that he is entitled to a new bond hearing at which (i) the

government must bear the burden of justifying his detention, and (ii) the immigration judge must issue contemporaneous written findings and conclusions detailing the bond determination in Mr. Ayobi's case.

Having reviewed the applicable law and the record in this case, the Court concludes that due process does require that a detainee in Mr. Ayobi's *specific* position receive *certain* of the procedural protections sought by the Petition. Accordingly, the Petition will be granted in part and denied in part, and Respondents will be ordered to provide Mr. Ayobi with a new bond hearing as specifically set forth below.

## BACKGROUND

On July 24, 2017, Petitioner Mohammad Ali Ayobi, a native and citizen of Afghanistan, was detained pending potential removal pursuant to 8 U.S.C. § 1226(a). On October 25, 2017, the immigration court held an individualized bond hearing at which Petitioner bore the burden of proving that he was not a flight risk or a danger to the community. The Immigration Judge ("IJ") denied Mr. Ayobi's request for bond, and no written findings were made. Petitioner did not appeal that bond determination. On January 30, 2018, the IJ ultimately issued an order denying Mr. Ayobi's request for relief and ordering him removed to Afghanistan.

Petitioner appealed the IJ's removal order, and on December 17, 2018, the Board of Immigration Appeals ("BIA") issued an order reversing the IJ's decision and remanding Mr. Ayobi's case back to the Immigration Court. Following remand, the Court held a second bond hearing on April 17, 2019, at which Mr. Ayobi again bore the burden of proof. The IJ again denied Mr. Ayobi's request for release on bond, and although the hearing's proceedings were

audio recorded, the IJ did not specifically state findings into the record.[1] Mr. Ayobi again did not appeal the IJ's bond determination decision.

On October 17, 2019, the IJ issued an order again denying Mr. Ayobi's underlying request for relief from removal and again ordering Mr. Ayobi's removal. Mr. Ayobi timely appealed that decision to the BIA, contending that the IJ again made reversible error in denying Petitioner's request for relief.[2] The record indicates that the BIA has not yet issued a briefing schedule for Petitioner's appeal, and it appears that it is likely to be six months or longer before the BIA adjudicates the appeal.[3]

On November 6, 2019, Mr. Ayobi filed the instant Petition seeking habeas relief. *See* docket no. 4. The Petition asserts that Mr. Ayobi's due process rights have been violated, and requests that the Court either (i) order Mr. Ayobi's release on bond, or (ii) in the alternative, order that Mr. Ayobi receive a new bond hearing at which (a) the government bears the burden of proof and (b) the IJ must provide contemporaneous written findings and conclusions with respect to the bond determination. *See id.* The Court issued an Order instructing Respondents to answer and/or respond to the Petition, and on December 9, 2019, Respondents filed a Response and Motion to Dismiss the Habeas Petition. *See* docket no. 11 (the "Response" and "Motion to

---

[1] The record indicates that—in denying Mr. Ayobi's second request for bond—the IJ relied on, at least in part, the information provided at the first bond hearing, for which there is no recording.

[2] The Petition contains numerous details regarding the underlying proceedings, and specifically asserts that the government and/or the IJ improperly relied on certain materials and/or based their determinations as to Mr. Ayobi's request for relief on speculation and/or misunderstandings of the record. As discussed below, *see* Part I, *infra*, those issues are not specifically before the Court, and the Court does not address them in this Order.

[3] At the January 28, 2020 oral argument hearing, counsel for Petitioner indicated that the BIA usually issues opinions 4 to 6 months after all briefing has been received, and that with respect to Mr. Ayobi's appeal, the BIA has not yet issued a briefing schedule. As a point of rough comparison, the Court notes that the BIA's reversal of the IJ's prior removal order in this case came approximately a year after the IJ's decision was issued.

Dismiss"). On December 27, 2019, Petitioner filed a reply brief, *see* docket no. 14, and after reviewing the briefing, the Court set the matter for an expedited oral argument hearing, which was held on January 29, 2020.[4] Prior to the oral argument hearing, each party also filed supplemental briefing for the Court's consideration. *See* docket nos. 21 & 23.

## DISCUSSION

### I.    Jurisdiction

Before turning to the substantive issues presented, the Court will first briefly discuss the jurisdictional arguments raised in Respondents' Motion to Dismiss. Respondents assert that this Court does not have jurisdiction to review the IJ's underlying order of removal. *See* docket no. 11. Pp. 6-7. It appears that Respondents' argument is based in large part on the fact that the Petition contains detailed background regarding the underlying immigration case and removal order, as well as the alleged defects that Petitioner contends will entitle him to reversal on appeal.

However, Mr. Ayobi has made clear that the Petition is not seeking a direct review of the underlying removal order, and instead, Petitioner included that information only in order to "explain the circumstances that led to his prolonged detention." Docket no. 14 p. 4. Indeed, the Petition only contains one claim, and that claim asserts a violation of Mr. Ayobi's Fifth Amendment rights. *See* docket no. 4. Although it is true that the Court generally would not have jurisdiction to review the underlying merits of Petitioner's order of removal, *see* 8 U.S.C. § 1252(a)(1) & (b)(9), the Court unquestionably has jurisdiction to review Mr. Ayobi's habeas claim asserting a violation of his constitutional rights. Specifically, 28 U.S.C. § 2241 authorizes a district court to grant a writ of habeas corpus whenever a petitioner is "in custody in violation

---

[4] The parties requested that the hearing be continued until January 29, 2020. *See* docket no. 17.

of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Under this provision, federal courts are empowered to hear claims by non-citizens challenging the constitutionality of their detention. *Demore v. Kim*, 538 U.S. 510, 516-17 (2003). Notably, district courts have adjudicated this exact type of habeas petition, *see, e.g., Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *3 (S.D.N.Y. July 25, 2018), and the government's Motion to Dismiss does not appear to dispute that § 2241 provides the Court with jurisdiction to review Mr. Ayobi's Fifth Amendment habeas claim.[5]

Accordingly, to the extent Respondents' Motion to Dismiss contends that Petitioner's habeas petition should be dismissed on any jurisdictional basis, Respondents' Motion to Dismiss is denied.

## II. Section 1226(a)'s Statutory Framework

Petitioner is detained under 8 U.S.C. § 1226(a). Pursuant to that provision, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). When the alien is not a criminal alien, as is the case here, the Attorney General may continue to detain the individual or may release the individual either on "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the

---

[5] Additionally, the Respondents argue that the Court should decline to address the merits of Mr. Ayobi's Petition because Mr. Ayobi allegedly "fail[ed] to exhaust administrative remedies." Docket no. 11 p. 1 n.2, p. 8 n.6. That argument also appears to focus on the Court's purported review of Mr. Ayobi's underlying removal order, and Respondents note that Mr. Ayobi has not yet exhausted his appellate remedies with respect to that order. *See id.* at p. 7 n.5. As discussed above, the Court has not been asked to review the merits of the IJ's removal order in Mr. Ayobi's underlying immigration case, and thus, that alleged basis for dismissal is inapplicable to Petitioner's habeas claim. Further, with respect to Mr. Ayobi's Fifth Amendment habeas claim, there is no requirement that a § 1226(a) detainee must exhaust other remedies before pursuing habeas relief. *See Malm v. Holder*, No. H-11-2969, 2012 WL 2568172, at *4 (S.D. Tex. June 29, 2012) ("To the extent that Petitioner seeks to raise a constitutional challenge to his length of detention under § 1226(a), the court may exercise jurisdiction without first requiring exhaustion of administrative remedies.").

Attorney General" or on "conditional parole." *Id.* § 1226(a)(1)-(2). After Immigration and Customs Enforcement makes the initial decision to detain an alien, the alien may request a custody redetermination hearing from an IJ at any time before a removal order becomes final. *See* 8 C.F.R. § 236.1(d)(1). The IJ's bond decision is appealable to the BIA. *See* 8 C.F.R. § 1003.19(f).

Notably, § 1226(a) does not indicate whether the government or the alien bears the burden of proof at a custody redetermination hearing and what amount of evidence would satisfy that burden. *See* 8 U.S.C § 1226(a). However, the BIA has held that, in a custody redetermination hearing under § 1226(a), "[t]he burden is on the alien to show to the satisfaction of the [IJ] that he or she merits release on bond." *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006); *accord In re Adeniji*, 22 I. & N. Dec. 1102, 1116 (BIA 1999) (holding that "respondent must demonstrate that his release would not pose a danger to property or persons, and that he is likely to appear for any future proceedings"). The alien must show that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Guerra*, 24 I. & N. Dec. at 40. Since *Adeniji*, the BIA has repeatedly reaffirmed that the burden should be on the alien. *See In re Fatahi*, 26 I. & N. Dec. 791, 793 (BIA 2016); *Guerra*, 24 I. & N. Dec. at 40.

As noted above, Petitioner has ostensibly received the process due under the statute—at least insofar as that statute has been interpreted by the BIA—in that he has been provided with two custody determination hearings at which he bore the burden of proof. Indeed, the Supreme Court has indicated that placing the burden of proof on a § 1226(a) detainee seeking bail is consistent with the *statute. See Jennings v. Rodriguez*, ___ U.S. ___, 138 S.Ct. 830, 841 (2018). However, the Supreme Court has also made clear that the question of whether the

6

*constitution* may require that the burden be shifted to the government is separate and independent from the question of whether the existing immigration bond procedures comply with the *statute. Jennings*, 138 S.Ct. at 851. The Supreme Court has not addressed that constitutional question, *see id.*, and that issue is central to the Petition in this case.

### III. Due Process Clause

The Fifth Amendment's Due Process Clause forbids the government from "depriv[ing]" any "person . . . of . . . liberty . . . without due process of law." U.S. Const. amend. V. The Supreme Court has emphasized that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Supreme Court "has repeatedly reaffirmed that 'civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" *Linares v. Decker,* No. 18 Civ. 6527 (JMF), 2018 WL 5023946 at *2 (S.D.N.Y. Oct. 17, 2018) (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)); *see Kansas v. Hendricks*, 521 U.S. 346, 353-56 (1997) (holding that a civil commitment statute satisfied the Due Process Clause in part because it "plac[ed] the burden of proof upon the State").

Further, the fact that a person may not be a citizen of the United States, or that he or she may not be in the country legally, does not deprive the individual of the protections of the Due Process Clause. *See Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."); *Zadvydas*, 533 U.S. at 693 ("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). Nonetheless, under certain

circumstances, the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. Therefore, the question that necessarily follows is what process is due to detainees, and specifically in this case, the process that is due to a detainee *in Petitioner's position*.

In addressing the merits of a due process claim, courts generally utilize a balancing test described in *Mathews v. Eldrdige*, 424 U.S. 319 (1976). Specifically, the Supreme Court has directed courts to weigh:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. Indeed, such a framework has been applied in recent cases addressing due process questions that are the same or similar to those in this case. *See, e.g., Padilla v. US Immigration & Customs Enf't*, 379 F. Supp. 3d 1170 (W.D. Wash. 2019), *modified sub nom. Padilla v. U.S. Immigration & Customs Enf't*, 387 F. Supp. 3d 1219 (W.D. Wash. 2019) (applying *Mathews* test to analysis of constitutionality of § 1226(a) bond determination procedures); *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) (same).

### IV. Whether Due Process Requires that the Government Hold, and Bear the Burden of Proof at, a New Bond Hearing for Petitioner

Petitioner contends that due process requires that he be provided a new bond hearing at which the government bears the burden of proof.[6] Having reviewed the circumstances of Petitioner's detention and the relevant *Matthews* factors, this Court agrees.

---

[6] The Court notes that the Petition requests that the Court independently "determine that Mr. Ayobi's detention is not justified because he has been denied release on bond without due process of law and in violation of 18 U.S.C. Section 1376(a); and order his release with appropriate conditions of supervision if necessary, taking into account Mr. Ayobi's ability to pay

8

As an initial matter, the Court recognizes that the government certainly has an interest in "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alteration omitted). At the same time, the individual interest at stake for § 1226(a) detainees—who can face years of detention before resolution of their immigration proceedings—is also "particularly important and more substantial than the mere loss of money." *Darko v. Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018) (internal citations and quotations omitted). Thus, courts that have addressed this exact issue have concluded that the balance of these two interests, "by itself, supports imposing the greater risk of error on the government—specifically, by allocating to it the burden of proof." *Id.*; *see also Linares*, 2018 WL 5023946, at *3.

Importantly, the balancing test—and specifically the factor requiring the Court to consider the risk of erroneous deprivation of a detainee's rights—tilts even further in Petitioner's favor when the Court considers Petitioner's specific circumstances. First, in the § 1226(a) detention context, the detainee's interest in receiving due process protections grows larger with every day in detention. In this case, by the Court's count, Mr. Ayobi is approaching his one-thousandth day in detention. Moreover, although the parties agree that the government has not taken improper steps to delay the adjudication of Petitioner's immigration proceedings, the record indicates that a significant portion of Petitioner's period of detention resulted from the BIA's reversal and remand of the IJ's first removal order on the merits. For that reason, it is clear that at least a significant portion of Mr. Ayobi's detention resulted from a government error and

---

a bond." Docket no. 4 p. 27. Petitioner contends that the Court has the authority to issue such an order, but the Court can find no direct precedent for doing so under parallel circumstances, at least without first instructing the government to provide the detainee with a new bond hearing. Absent additional support, the Court finds that form of relief to be inappropriate on the present record, and the Court will therefore focus its analysis on the issue of whether Petitioner should be provided with a new bond hearing with additional procedural protections.

not an error of his own.[7] Further, although Petitioner has not been charged with a crime and has no criminal record, Petitioner is being detained in prisoner-like conditions.[8] And finally, although the Court has not considered the merits of Petitioner's underlying immigration case, the prior BIA reversal and the materials provided by the parties indicate that there is at least a non-negligible chance that Petitioner may ultimately receive relief from removal. Thus, having considered Petitioner's circumstances, it is clear that Petitioner faces a severe risk of erroneous deprivation his rights if he is not afforded additional protections. Additionally, it is self-evident that allocating the burden of proof to the government to affirmatively justify Petitioner's continued detention—as opposed to forcing Petitioner to again prove a negative—is a reasonable approach to mitigate the risk of erroneous deprivation of his due process rights. *See Darko*, 342 F Supp. 3d at 435.

In light of the aforementioned risk to Mr. Ayobi and an obvious procedural mechanism that would help mitigate that risk, the comparative burden on the government appears minimal. As an initial matter, the Court reiterates that it is not issuing a sweeping ruling that mandates that the government bear the burden of proving that every § 1226(a) detainee poses either a flight risk or a danger to the community in order to justify detention. Instead, the Court's conclusion is Petitioner-specific, and any burden associated with shifting the burden of proof to the government extends only to Petitioner, who has been in detention for more than two-and-a-half

---

[7] The Court has not considered the merits of the underlying immigration proceedings, and the Court has not concluded that the IJ necessarily arrived at an incorrect *conclusion* in the first order on the merits. Instead, the Court merely notes that the IJ's reversible error in the first order resulted in the need for subsequent proceedings that have added many months (and perhaps ultimately years) to Petitioner's immigration case and detention.

[8] The record indicates that Petitioner is being detained at the South Texas Detention Center in Pearsall, Texas ("Pearsall").

years.[9] Additionally, although the government asserts that an alien is generally "in the best position to provide evidence relevant" to the bond determination, see docket no. 11 p. 24, that abstract contention does not appear to be applicable in this case. Indeed, because of the numerous proceedings involving Petitioner over the past two-and-a-half years, the government appears to have substantial information about Mr. Ayobi and his background.[10] To the extent there is evidence demonstrating that Petitioner (a non-citizen who has no criminal record and who may be in danger if he returns to his country of citizenship) is a flight risk and/or a danger to the community, the government should by this point have that evidence in its possession such that it can make that showing in the immigration court.

Thus, having balanced the relevant factors, the Court therefore concludes—as almost all the courts that have addressed similar cases have[11]—that the Due Process Clause requires that Petitioner be provided a new bond hearing at which the government bears the burden of proof.

---

[9] The Court understands that other district courts have issued more sweeping rulings in which the courts have concluded that a larger subset of or, in some instances, all § 1226(a) detainees are entitled to a bond hearing at which the government bears the burden of proof. See, e.g., Padilla, 379 F. Supp. 3d 1170; Darko, 342 F. Supp. 3d 429. The Court need not address that broader question as part of this Order, however, in order to determine that a detainee in Petitioner's specific position is entitled to certain additional procedural protections.

[10] As part of the filings in this case, Respondents attached hundreds of pages about Petitioner, his background, and the underlying merits of his immigration case. See docket no. 23-1.

[11] In a final attempt to avoid the result reached by the majority of courts that have addressed this issue, Respondents direct the Court to Borbot v. Warden Hudson Cty. Corr. Facility, 906 F.3d 274 (3d Cir. 2018). In Borbot, the Third Circuit held that a § 1226(a) detainee who had previously had his bond request denied was not constitutionally entitled to a new bond hearing at which the government had the burden of proof. Id. at 280. However, the Borbot court made clear that its holding was specific to the petitioner in that case, who had been detained for approximately fourteen months at the time of his petition seeking habeas relief. See id. at 276, 280. Indeed, the Borbot court specifically stated that the Due Process Clause "might entitle an alien detained under § 1226(a) to a new bond hearing" if his or her detention became "unreasonably prolonged, whether by virtue of government delay or some other cause." Id. at 280. Petitioner in this case has been detained more than twice as long as the petitioner before the Court in Borbot, and thus, the Court finds Respondents' reliance on Borbot to be unpersuasive.

*See, e.g., Padilla*, 379 F. Supp. 3d 1170; *Darko*, 342 F. Supp. 3d 429; *Pensamiento v. McDonald*, 315 F. Supp. 3d 684 (D. Mass. 2018); *Linares*, 2018 WL 5023946. Additionally, in light of the interests at stake, the Court agrees with the numerous courts that have concluded that the government's required showing should be governed by the "clear and convincing evidence" standard. *See Darko*, 342 F. Supp. 3d at 435-36 (noting that "overwhelming majority of courts" have determined "clear and convincing" standard to be appropriate); *Linares*, 2018 5023946 at *5 (same); *but see Pensamiento*, 315 F. Supp. 3d at 693 (holding that the Due Process Clause requires only that government "prove to the satisfaction" of the IJ that the alien is dangerous or a risk of flight in case in which alien had been detained for approximately five months). Although perhaps a lesser burden may satisfy the Court's due process concerns under different circumstances, *see Pensamiento*, 315 F. Supp. 3d at 693, the Court concludes that the "clear and convincing evidence" standard is necessary in this case to satisfy due process in light of Petitioner's two-and-a-half year detention and other specific circumstances.

Accordingly, for the reasons set forth above, the Court holds that the Due Process Clause requires that a § 1226(a) detainee who (i) has no criminal record, (ii) has been detained for more than two-and-a-half years, (iii) has already had one successful appeal to the BIA which added to the period of detention, (iv) is being held in prison-like conditions, and (v) has a non-negligible chance of receiving relief from removal in the underlying immigration proceedings, must be provided with an individualized bond hearing at which the government bears the burden of demonstrating—by clear and convincing evidence—that the detainee is a danger to the community or a flight risk. Thus, the Court will grant Petitioner's habeas Petition to the extent it seeks such relief and order that such a hearing be held promptly in Petitioner's case.

Additionally, because the Court has concluded that the Petition has merit to the extent Petitioner seeks such relief, Respondents' Motion to Dismiss will be denied.

### V. Whether Due Process Requires that the IJ Issue Contemporaneous Written Findings Following Petitioner's Bond Hearing

Now that the Court has concluded that Petitioner is entitled to a new bond hearing, the Court must next decide whether the Due Process Clause requires that Petitioner be provided with a "contemporaneous written decision" at the conclusion of the hearing. *See* docket no. 4. Petitioner notes that a detainee wishing to appeal a bond decision must identify the factual and legal issues he or she is challenging before appealing, *see* 8 C.F.R. § 1003.3(b), and thus asserts that, absent a contemporaneous written ruling, "the individual has no way to decide whether to expend the time, resources, and emotional strain on an appeal, let alone any basis for articulating to the BIA why it should take up the appeal." Docket no. 21 p. 6.

Having reviewed the record and the applicable law, the Court concludes that the Constitution does not necessarily require that a § 1226(a) detainee be provided with contemporaneous written findings and conclusions following his or her bond hearing. Instead, as discussed below, the Court concludes that the interests asserted by Petitioner may be protected by providing Petitioner with an oral explanation of the IJ's findings and conclusions on the record and a meaningful opportunity to obtain an audio recording of that information for the purposes of appeal.

As an initial matter, the Court agrees with Petitioner that the Due Process Clause may sometimes require that a detainee be provided with findings and conclusions related to the detention determination. Indeed, the deprivation of a "verbatim record and timely written findings" certainly impacts "the ability to effectively appeal adverse determinations" such that it poses a threat to a detainee's liberty interest. *Padilla*, 379 F. Supp. 3d at 1176. But the *Mathews*

balancing test requires that the Court balance that risk with other factors, and after doing so, the Court does not necessarily agree that Mr. Ayobi's requested relief—namely that he and other § 1226(a) detainees be provided with contemporaneous written findings—is the relief that is *necessarily* mandated by the Constitution.

Importantly, the relevant analysis dictates that the Court must also consider "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. In this case, materials in the record indicate that there may be a tremendous burden imposed on the immigration courts if each IJ is forced to draft written findings and conclusions for § 1226(a) detainees following each bond determination hearing.[12] *See* docket no. 23-2. Additionally, the record indicates that such a requirement may delay both the detainee's bond determination and other detainees' merits determinations.[13] *See id.* at ¶ 13. Further, Petitioner's briefing provides no indication as to what constitutes "contemporaneous" for the purposes of Petitioner's constitutional arguments. To the extent Petitioner requests that such a written order be issued near-instantaneously, that appears to be impractical given that each immigration judge's daily calendar routinely contains back-to-back bond hearings, master calendar hearings and individual merits hearings. *See* docket no. 23-2 ¶ 5. And to the extent Petitioner contends it is a longer period (but one before the appeal deadline), such a procedure would still risk some of the

---

[12] In conjunction with its supplemental briefing, Respondents attached the Affidavit of Clay N. Martin, Assistant Chief Immigration Judge, San Antonio Immigration Court. *See* docket no. 23-2. The Affidavit states that there are presently more than 1,000 pending cases at the Pearsall facility, *id.* at ¶ 4, and that some bond memoranda require several hours to complete. *Id.* at ¶ 10.

[13] The Affidavit states that the requirement that written memoranda be produced for all bond hearings would mean that "many removal hearings would be deferred to later dates" and that "[m]any detainees would therefore face longer overall removal proceedings due to the delay of their removal hearings in order to conduct bond hearings with contemporaneous written orders." Docket no. 23-2 ¶ 13.

concerns that Petitioner raises about the current policies. *See* docket no. 4 (arguing that findings written "weeks after the decision was made can overlook key facts and findings, either due to forgetfulness or bias on the part of the immigration judge").

To be clear, if an adequate alternative that may help mitigate the risk to Petitioner's liberty was not available in this case, the Court very well may hold that Petitioner is entitled to the written findings that he seeks. Indeed, even a detainee who is represented by counsel may not know whether he or she has a basis to appeal if there is no record indicating why a bond request is denied. *See Padilla*, 379 F. Supp. 3d at 1180-81. But the *Mathews* test asks the Court to consider "the value of additional procedural safeguards," and the record indicates that the procedural safeguards available to Petitioner are constitutionally sufficient *if implemented appropriately*. Specifically, the record indicates that the courtrooms in which immigration bond hearings are held are equipped with audio recording devices, and the existing procedures available to Petitioner at the Pearsall facility will permit him (i) to request that the bond proceedings be recorded, and (ii) to request a copy of the recording immediately following the proceedings. *See* docket no. 23-2 ¶ 7. Thus, although Petitioner raises general concerns about other detainees' ability to request such procedures and/or other detainees' ability to review the contents of a recording if it is provided, those concerns do not appear to be applicable *to Petitioner*.[14] Indeed, it is apparent that Petitioner was successfully able to request and review the

---

[14] This Court's Order is limited only to Petitioner's circumstances for which the Court has a detailed record. Importantly, the record in this case does not contain sufficient evidence in order for the Court to reach conclusions regarding (i) whether immigration judges orally describe their findings and conclusions as a matter of practice, (ii) whether detainees are informed of the option of requesting an audio recording of their bond hearings, or (iii) whether detainees who are not represented by an attorney have a technical means of reviewing the contents of any bond hearing recordings. The Court notes that the answers to these questions may dictate whether the audio recording option that appears to be available to Petitioner in this case is, from a practical standpoint, actually available to other detainees at Pearsall or elsewhere. Thus, although the

15

audio recording of his second bond hearing, and Petitioner has provided no reason why he will be unable to do so again at his new bond hearing. Thus, assuming the IJ provides an oral explanation of any specific findings or conclusions into the record[15]—which the IJ will be instructed to do—the audio recording should provide Petitioner with an adequate basis for determining whether he has a valid basis to appeal an adverse bond order.[16]

Accordingly, the Court will instruct the immigration court to conduct Petitioner's new bond hearing in a manner such that Petitioner will be provided with an audio recording of the IJ's specific findings and conclusions upon request. However, the Petition will be denied to the extent Mr. Ayobi seeks a contemporaneous written decision at the conclusion of his bond hearing.

---

Court will not apply the *Mathews* balancing test to the more general question in light of the fact that there is only a limited record regarding these practices before the Court, the Court notes that there very well may be constitutional concerns with the government's existing procedures (that are not implicated in this case) in the event there are other detainees who are not (i) provided with a recorded, oral explanation of the IJ's findings at the bond hearing, (ii) notified of the option of requesting that audio recording, and/or (iii) provided with an opportunity and means to review the contents of the audio recording prior to the deadline for filing an appeal of any bond determination.

[15] The Affidavit provided by Respondents states that "the immigration judges in this jurisdiction typically state their ruling and the reasons supporting their ruling orally for the parties." Docket no. 23-2 ¶ 8.

[16] The Court recognizes that at least one district court has ordered the government to provide contemporaneous written findings and conclusions to various detainees at the conclusion of their § 1226(a) bond hearings. *See Padilla*, 379 F. Supp. 3d 1170. However, it is not clear from the *Padilla* opinion whether there was evidence specifically demonstrating that audio recordings of the detainees' bond hearings would be made available to the detainees. *See id.* at 1173 (noting that there "is no requirement that immigration courts record their proceedings"). In this case, the record before the Court indicates that such a recording will be made available to Petitioner upon Petitioner's request, *see* docket no. 23-2 ¶ 7, and the Court concludes that this procedure will adequately address Petitioner's concerns regarding the adequate notice of any grounds for appeal in this case.

16

## CONCLUSION AND ORDER

For the reasons and to the extent set forth above, Petitioner Mohammad Ali Ayobi's Petition for Habeas Corpus (docket no. 4) is **GRANTED IN PART** and **DENIED IN PART**, and Respondents' Motion to Dismiss the Habeas Petition (docket no. 11) is **DENIED**.

**IT IS THEREFORE ORDERED** that—within ten (10) days of the date of this Order—the government shall take Mr. Ayobi before an immigration judge for a new individualized bond hearing.

**IT IS FURTHER ORDERED** that, at the hearing, the government shall bear the burden of demonstrating, by clear and convincing evidence, that Mr. Ayobi is a danger to the community or a flight risk.

**IT IS FURTHER ORDERED** that (i) the hearing must be recorded on the Digital Audio Recording system, (ii) the recording of the proceedings must be promptly provided to Mr. Ayobi, and (iii) the immigration judge conducting the hearing must orally explain all specific findings and conclusions on the record so that the immigration judge's specific basis for granting or denying Mr. Ayobi's release on bond is memorialized on the recording.

Finally, **IT IS ORDERED** that *in the event* the government fails to provide Mr. Ayobi with such a bond hearing within the timeframe set forth above, Respondents must immediately release Petitioner.

The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

**SIGNED** this 6 day of February, 2020.

ORLANDO L. GARCIA
Chief United States District Judge